**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| WASHINGTON MUTUAL, INC., ET AL.,[1] ) | Case No. 08-12229 (MFW) |
| ) | |
| Debtors. ) | Jointly Administered |
| _____) | |
| ) | |
| OFFICIAL COMMITTEE OF UNSECURED ) | |
| CREDITORS OF WASHINGTON MUTUAL, ) | |
| INC., ET AL., ON BEHALF OF CHAPTER ) | |
| 11 ESTATES OF WASHINGTON MUTUAL, ) | |
| INC., ET AL., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 10-53158 (MFW) |
| ) | |
| JAMES CORCORAN, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM OPINION**[2]

Before the Court is the Motion of James Corcoran ("Corcoran") to Dismiss the Complaint filed by the Official Committee of Unsecured Creditors of Washington Mutual, Inc. (the "Committee") for failure to state a claim on which relief can be

---

[1] The Debtors in this case are Washington Mutual, Inc. ("WMI") and WMI Investment Corporation ("WMIIC").

[2] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Accordingly, the Court accepts the facts as averred in the Complaint, which must be presumed true for the purposes of this Motion to Dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

granted.  For the reasons set forth below, the Court will grant the Motion in part and deny the Motion in part.

I.   BACKGROUND

The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on September 26, 2008 (the "Petition Date").  The United States Trustee appointed the Committee.  The Committee and the Debtors entered into a stipulation approved by the Court, which authorized the Committee to bring certain causes of action on behalf of the Debtors' estates.

On September 24, 2010, the Committee commenced the instant adversary proceeding against Corcoran, a former president of retail banking for WMI, to avoid a transfer Corcoran had received pursuant to his Severance Agreement with WMI in the amount of $2,211,210 (the "Transfer"), within 90 days of the Petition Date.  The Complaint seeks to avoid the Transfer as preferential under section 547 (Count 1) and as fraudulent under section 548 (Count 2) and section 544(b) utilizing Washington state law (Count 3).  The Complaint also seeks to recover the Transfer under section 550 (Count 4) and to disallow any claim by Corcoran against the Debtors under section 502(d) (Count 5).

In response to the Complaint, Corcoran filed the current

2

Motion to Dismiss the Complaint in its entirety for failure to state a claim under Rule 12(b)(6). Briefing has been completed and the matter is ripe for decision.

II. <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this adversary proceeding. 28 U.S.C. §§ 1334(b), 157(a) & (b)(1). This adversary proceeding is a core proceeding to be heard and determined by the Bankruptcy Court. 28 U.S.C. §§ 157(b)(2)(A), (B), (E) & (F). The parties have raised no objection to the Court rendering a final judgment in this proceeding.

III. <u>STANDARD OF REVIEW</u>

To survive a Rule 12(b)(6) motion to dismiss, the claims alleged in a complaint must meet the standards of pleading articulated by the Supreme Court in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). Those decisions have shifted federal pleading standards from notice pleading to a heightened standard of pleading. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009). This heightened pleading requirement applies to all civil suits in federal courts. <u>Id.</u>

To survive a motion to dismiss, a complaint must contain

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Conversely, a "pleading offering only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Fowler, 578 F.3d at 210 (quoting Twombly, 550 U.S. at 555). "Courts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 184 (3d Cir. 2000). A court must "draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner." Id.

Determining whether a complaint is "facially plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief." Id.

4

The Third Circuit has instructed courts to conduct a two-part analysis. Fowler, 578 F.3d at 210. "First, the factual and legal elements of a claim should be separated," with the reviewing court accepting "all of the complaint's well-pleaded facts as true, but . . . disregard[ing] any legal conclusions." Id. at 210-11. Next, the reviewing court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." Id.

IV. DISCUSSION

   A. The Severance Agreement and CIC are Integral to the Complaint

As a preliminary matter, Corcoran argues that the Severance Agreement, attached to his Motion, which he signed when he left WMI should be considered as part of the Complaint. (D.I. 84; Ex. 1). The Committee does not deny that it relied on this extrinsic document when framing the Complaint. The Committee contends, however, that the Complaint is also premised on a Change in Control Agreement (the "CIC") a form copy of which was attached by the Committee to its response to the Motion. The Committee asks the Court to consider the CIC.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426

5

(3d Cir. 1997). "However, an exception to the general rule is that a 'document <u>integral to or explicitly relied</u> upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" <u>Id.</u> (quoting <u>Shaw v. Digital Equipment Corp.</u>, 82 F.3d 1194, 1220 (1st Cir. 1996)). <u>See also</u> <u>U.S. Express Lines, Ltd. v. Higgins</u>, 281 F.3d 383, 388 (3d Cir. 2002) (holding that the relevant record under consideration consists of the Complaint and any "document <u>integral to or explicitly relied upon</u> in the Complaint").

"The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." <u>Burlington</u>, 114 F.3d at 1426 (internal quotations omitted). The test is not whether the complaint explicitly cites an extrinsic document, but whether the claims are "based" on the extrinsic document. <u>Id.</u> (holding that it was reasonable for the trial court to consider underlying data relied upon by the complaint in deciding a motion to dismiss); <u>Mervyn's, LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)</u>, 426 B.R. 488 (Bankr. D. Del. 2010) (finding extrinsic documents integral to the complaint when both parties referenced and relied heavily on the documents in the complaint and motion to dismiss).

6

Here, the Complaint does not specifically reference the Severance Agreement or the CIC.  Rather, the Complaint mentions an employment agreement as the basis for the Transfer.  There are, in actuality, two agreements relevant to the employment relationship.  The first is the Severance Agreement referenced by Corcoran, which addresses the specific amount of severance to be paid to Corcoran.  The second is the CIC, which addresses the employment status of Corcoran and his entitlement to severance pay if there is a change in control or if he is terminated.  As both the Severance Agreement and the CIC address Corcoran's employment status and severance rights, both can be construed as relevant to the employment agreement referenced in the Complaint.[3]  Therefore, the Court finds the Severance Agreement and the CIC integral to the Complaint and will consider them in resolving the Motion to Dismiss.

B.  Preferential Transfer (Count 1)

Corcoran contends that the Committee fails to state facts

---

[3] The Severance Agreement offered by Corcoran is signed by Corcoran.  The form CIC offered by the Committee is not.  However, the Committee also attached a Form 8K filed by WMI with the SEC discussing Corcoran's execution of the CIC.  As the Form 8K is a matter of public record, it too may be considered in deciding the Motion to Dismiss.  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations of the complaint, exhibits attached to the complaint and matters of public record.").

7

sufficient to plead the elements of a preferential transfer under section 547. The purpose of the preference pleading requirements is "to ensure that the defendant receives sufficient notice of what transfer is sought to be avoided." Gellert v. The Lenick Co. (In re Crucible Materials, Corp.), Adv. No. 10-55178, 2011 WL 2669113, at *3 (Bankr. D. Del. July 6, 2011).

To provide sufficient notice to the defendant, courts have determined that a preference complaint must include: "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date [of the transfer], (ii) name of the debtor/transferor, (iii) name of transferee, and (iv) the amount of the transfer." OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.), 340 B.R. 510, 522 (Bankr. D. Del. 2006).

Corcoran argues that the Complaint is deficient on two grounds: (1) the Complaint fails to identify what antecedent debt was satisfied by the Transfer, and (2) the Complaint does not identify the Debtor that made the Transfer.

    1.   Identity of the Transferor

As to the identity of the transferor, Corcoran argues that the Complaint does not identify who made the Transfer. The Committee responds that, by integrating the Severance Agreement, the identity of the transferor becomes known.

The Court agrees with Corcoran. The Severance Agreement merely establishes that an agreement existed between Corcoran and WMI, whereby WMI became obligated to pay Corcoran severance. Contrary to the Committee's suggestion, however, it does not establish that WMI was the Debtor who actually made the Transfer. Therefore, the Court finds that the Complaint fails to identify the Transferor.

### 2. Antecedent Debt

For a transfer to be preferential, the plaintiff must establish, inter alia, that the transfer was "for or on account of an antecedent debt owed by the debtor before such transfer was made . . . ." 11 U.S.C. §547(b)(2). As a result, to defeat a Rule 12(b)(6) motion to dismiss a preferential transfer claim, the plaintiff must adequately plead that the plaintiff became "legally bound to pay before the transfer [was] made." Argus Mgmt. Group v. J-Von, N.A. (In re CVEO Corp.), 327 B.R. 724, 728 (Bankr. D. Del. 2005).

Corcoran argues that because the Severance Agreement did not become effective until July 17, the same date the Transfer was made, the obligation was not an antecedent debt. See Anderson News, LLC v. The News Grp., Inc. (In re Anderson News, LLC), Adv. Pro. No. 11-53979, 2012 WL 3638785, at *2 (Bankr. D. Del. Aug. 22, 2012) ("Payment of a debt on the date it was incurred is

9

generally not for or on account of an antecedent debt."). The Severance Agreement at paragraph 15 states that it did not become effective until the end of the seven-day revocation period. The Severance Agreement was signed on July 10, 2008, which made it effective on July 17, 2008. During that time, Corcoran had the unilateral right to revoke the Severance Agreement.

The Committee disagrees, arguing that the obligation to make the Transfer arose on the date the Severance Agreement was signed, seven days before the Transfer. See Burtch v. Huston (In re USDigital, Inc.), 443 B.R. 22, 36 (Bankr. D. Del. 2011) ("A debt is antecedent if it was incurred prior to the allegedly preferential transfer."). According to the Committee, debts arise at the time agreements are made, not when they become due. See Official Comm. of Unsecured Creditors v. Whalen (In re Enron Corp.), 357 B.R. 32, 45 (Bankr. S.D.N.Y. 2006) (finding that courts have concluded that a legal obligation arises as it relates to antecedent debt "not with a specific cause of action - such as when the agreement was breached or payment due - but when a contingent, even remote cause of action arose; that is, when the agreement was made"). As an example, the Committee cites as on point Official Employment-Related Issues Committee of Enron Corp. v. Arnold (In re Enron Corp.), Adv. Pro. Nos. 03-3522, 03-3721, 2005 WL 6237551, at *19 (Bankr. S.D. Tex. Dec. 5, 2005)

(finding that a bonus agreement vested on the date of signing even though there was a clawback provision if the employee voluntarily left employment within 90 days of the signing).

The Court finds Arnold distinguishable. In Arnold, the agreement was effective at the time it was signed. The signing obligated the employer to pay the bonus, but gave it the right to clawback the bonus if the defendant left voluntarily within 90 days of the signing. Here, however, under the express language of the Severance Agreement, no obligation existed for either WMI or Corcoran until the seven-day revocation period had expired. Therefore, because the severance was paid on the same date that WMI's obligation arose, the Court finds that the severance payment was not made on account of an antecedent debt.

Because the Committee failed to plead the identity of the transferor or that the Transfer was on account of an antecedent debt, the Court will dismiss Count 1.

    C.    Fraudulent Transfer (Count 2)

        1.    Pleading Fraud

Corcoran asserts that the Committee has failed to meet the heightened pleading standard required by Rule 9(b) for its fraudulent transfer claims. See Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009. Where a party asserts a claim for fraud, the complaint must set forth facts with sufficient particularity to

apprise the defendant of the charges against him so that he may prepare an adequate answer. Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.), 327 B.R. 711, 718 (Bankr. D. Del. 2005).

However, a claim of constructive fraud under section 548(a)(1)(B) "need not allege the common variety of deceit, misrepresentation, or fraud in the inducement . . . because the transaction is presumptively fraudulent and all that need be alleged is that the conveyance was made without fair consideration while the debtor was functionally insolvent." Global Link, 327 B.R. at 718. See also Astropower Liquidating Trust v. Xantrex Tech., Inc. (In re Astropower), 335 B.R. 309, 333 (Bankr. D. Del. 2005).

Corcoran argues nonetheless that the fraudulent conveyance claim is not sufficiently pled because the Committee merely parrots the language of section 548(a)(1). To provide fair notice, the complainant must go beyond merely parroting statutory language. Id. See also Burtch v. Dent (In re Circle Y of Yoakum, Texas), 354 B.R. 349, 356 (Bankr. D. Del. 2006).

    2.    Reasonably Equivalent Value

Specifically, Corcoran asserts that the Committee failed to plead that the Debtors received no reasonably equivalent value in exchange for the Transfer. See 11 U.S.C. § 548(a)(1)(B)(i). In

response, the Committee asserts that Corcoran's argument is totally reliant on issues of fact that are not appropriate for the Court to determine at this stage of the litigation.

"Courts in the Third Circuit have defined 'reasonably equivalent value' as 'any benefit . . . whether direct or indirect . . . [which includes any] 'opportunity' to receive an economic benefit in the future.'" TSIC, Inc. v. Thalmeier (In re TSIC, Inc.), 428 B.R. 103, 113 (Bankr. D. Del. 2010) (quoting Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors (In re R.M.L., Inc.), 92 F.3d 139, 148 (3d Cir. 1996)).  In other words, "a party receives reasonably equivalent value for what it gives up if it gets roughly the value it gave." Walker v. Sonafi Pasteur (In re Aphton Corp.), 423 B.R. 76, 89 (Bankr. D. Del. 2010) (internal citations omitted).  To sufficiently plead lack of reasonably equivalent value, the plaintiff must present some information about the value the debtor received in exchange for the transfer.  See Global Link, 327 B.R. at 717 (holding that a claim under section 548 is insufficient when it "simply alleges the statutory elements of a constructive fraud action under section 548(a)(1)(B)").

The Committee's only attempt at pleading any type of value was merely to plead that the Debtors received no services by Corcoran in exchange for the Transfer.  However, value is not

13

limited to the performance of services.  See 11 U.S.C. § 548(d)(2)(A) ("'value' means property, or satisfaction or securing of a present or antecedent debt of the debtor").

Corcoran claims that reasonably equivalent value was exchanged because the Severance Agreement contained provisions conferring value on WMI, including: (1) a release of claims and waiver of any potential lawsuit, (2) non-disclosure and other protections of confidential information, and (3) a covenant of non-solicitation.

The Committee argues that: (1) Corcoran had already agreed to these provisions in the CIC and, therefore, no additional value was conferred in the Severance Agreement; (2) Corcoran failed to quantify the value of the benefits to show they were reasonably equivalent to the Transfer; and (3) at most, the value conferred was Corcoran's agreement to waive future claims, which is generally not considered reasonably equivalent value.  See TSIC, Inc., 428 B.R. at 113 (holding that waiver of future claims, where no claim is pending, cannot constitute reasonably equivalent value).

Determining reasonably equivalent value is largely an issue of fact.  Forman v. Jeffrey Matthews Fin. Gr., LLC (In re Halpert & Co.), 254 B.R. 104, 115 (Bankr. D.N.J. 1999).  For the purposes of this Motion to Dismiss, the Court is limited to the facts

14

alleged in the Complaint and any integrated documents, which include the Severance Agreement and CIC.  Corcoran is correct that the CIC contained provisions that deal with confidentiality, non-solicitation and possession of materials similar to those in the Severance Agreement.  The non-solicitation and possession of materials provisions require actions Corcoran must take post-employment and are pre-existing legal duties under the CIC.  Therefore, the non-solicitation, and possession of materials provisions cannot constitute value under the Severance Agreement.

The confidentiality provision in the CIC, by contrast, only applies to Corcoran while he is employed by the Debtors.  Any confidentiality agreement applicable post-employment, therefore, would be a new benefit owed under the Severance Agreement.  Consequently, the Court finds that the post-employment confidentiality provision of the Severance Agreement may be considered in determining reasonably equivalent value.

Quantifying the value of the confidentiality provision, however, is an issue of fact.  See Halpert, 254 B.R. at 115.  The Severance Agreement does not state any value for the confidentiality provision to allow the Court to determine if it is reasonably equivalent to what Corcoran received under the Agreement.  This is an issue of fact that can only be properly developed with discovery and at trial.  The Committee's assertion

15

in the Complaint that it is not reasonably equivalent, though conclusory, is still sufficient to state a claim for lack of reasonably equivalent value.  See id. at 121-22.  Therefore, the Court will deny Corcoran's Motion to Dismiss Count 2.

    D.    <u>Fraudulent Transfer Under State Law (Count 3)</u>

As to Count 3, the Committee alleges that the Transfer was a fraudulent conveyance under Washington state law.  Corcoran argues that, like the previous count, the Complaint merely parrots the statutory language and provides no facts necessary for the heightened pleading standard under Rule 9(b).

The Committee responds that unlike a constructive fraud claim under the Code, it is not required to plead lack of reasonably equivalent value under Washington state law and, therefore, the Complaint satisfies the pleading requirement.

The Washington statute has two separate causes of action for constructive fraud.  The first part of the statute requires that the transfer be made for less than reasonably equivalent value while the debtor was insolvent or became insolvent.  See Wash. Rev. Code § 19.40.051(a).  The second part of the statute, upon which the Committee relies, does not require a transfer be made for less than reasonably equivalent value but does require that the transfer be made to an insider for an antecedent debt while the debtor was insolvent and that the insider has reasonable

cause to believe that the debtor was insolvent. Wash. Rev. Code § 19.40.051(b).

There are no allegations in the Complaint that the Debtors were insolvent at the time of the Transfer or that Corcoran had reason to believe they were insolvent. Further, the Court has already found that the Transfer was not on account of an antecedent debt. Therefore, the Court will grant Corcoran's Motion to Dismiss Count 3.

### E. Other Counts

Corcoran's only argument for dismissal of Count 4, recovery of property under section 550, and Count 5, disallowance of a claim under section 502(d), is that they are warranted with the dismissal of Counts 1 and 3. However, as Count 2 has survived the Motion and provides a basis for sections 502(d) and 550, the Motion to Dismiss will be denied as to Counts 4 and 5.

### F. Leave to Amend

Normally, when granting a motion to dismiss, leave to amend the complaint under Fed. R. Civ. P. 15(a) will be freely granted. See Shane v. Fauver, 213 F.3d 113, 115-16 (3d Cir. 2000) (holding that the court should generally grant leave to amend a complaint dismissed for failure to state a claim). The presumption is that the moving party should be given leave to amend. Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir. 1984). Where

there is no undue delay, bad faith, undue prejudice, or futility, that presumption remains. <u>Burtch v. Henry Prod., Inc. (In re AE Liquidation, Inc.)</u>, Adv. No. 10-55478, 2012 WL 32589, at *2 (Bankr. D. Del. Jan. 6, 2012).

Corcoran has not alleged any undue delay, bad faith, undue prejudice, or futility to amending the Complaint, and the Court finds none. The Court will, therefore, grant the Committee 30 days to amend the Complaint.

V. <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant Corcoran's Motion to Dismiss as to Counts 1 and 3 with leave to amend the Complaint on these Counts. The Court will deny the Motion as to Counts 2, 4, and 5.

An appropriate Order is attached.

Dated: July 16, 2013

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge